[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13992
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-23842-JAL


JOHN ANTHONY COLWELL,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 6, 2021)

Before WILLIAM PRYOR, Chief Judge, JORDAN and GRANT, Circuit Judges.

PER CURIAM:

John Anthony Colwell appeals the summary judgment in favor of the

Commissioner of the Social Security Administration and against Colwell's claim for supplemental security income. 42 U.S.C. §§ 1383(c)(3), 405(g). Colwell argues that the administrative law judge failed to fairly assess the evidence by neglecting to assign a weight to the opinions of five treating physicians and giving significant weight to the opinion of Dr. Marvin Bittinger, a medical consultant. Colwell also challenges the finding that he had the residual functional capacity to perform light work and the decision to discredit his testimony about his symptoms and limitations. We affirm.

Even if the administrative law judge erred by failing to assign a weight to the opinions of five physicians who treated Colwell's ankle and spinal injuries, that error was harmless because their medical records supported the determination that injuries to Colwell's ankle and back and his obesity were not disabling. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). Dr. Hugh Unger treated Colwell for a sprained left ankle and recorded that he improved markedly after physical therapy. Afterwards, Dr. David Bell examined Colwell's ankle and recorded that he had full strength in all four muscle groups and a normal range of motion in his ankle and that he had no focal motor or sensory deficits in his lower extremities. And after Colwell fell and required surgery on his ankle, Dr. Bell recorded that Colwell's condition was improving steadily and that he had traveled internationally without difficulty. Dr. David Robbins treated Colwell for back pain and recorded

2

that, although he had tenderness and a decreased range of motion in his neck, he had normal muscle tone and bulk with full strength in all muscle groups and that his deep tendon reflexes, lower extremity coordination, and gait were normal. Dr. Neil Brown, despite classifying Colwell as morbidly obese at a weight of 250 pounds and recommending that he undergo lumbar surgery, reported that he had full strength in all muscle groups except a minor weakness when grasping with his left hand, that his gait and station were normal, and that he could walk without difficulty on his heels and toes. Later, Dr. David Leizman examined Colwell and found that he had tenderness and a mildly decreased range of motion in his spine, but that he had no misalignment, asymmetry, crepitation, or defects and that he had normal sensation and motor strength in his upper extremities. The treating physicians' records supported the administrative law judge's finding that Colwell's conditions were not disabling.

Substantial evidence supported the administrative law judge's decision to give significant weight to Dr. Bittinger's opinion that Colwell could perform light work. As a "State agency medical . . . consultant[, Dr. Bittinger could be regarded] [as] highly qualified and [an] expert[] in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1). Dr. Bittinger based his opinion on all evidence available, which included Colwell's medical records from his five treating physicians, the Homestead Hospital Emergency Department, the Jackson South Community

3

Hospital, and the St. Lucie Medical Center. *See id.* §§ 416.913a(a)(1), 404.1527(e), 404.1513a. And Dr. Bittinger's opinion was consistent with the findings of the five physicians and hospitalists that Colwell had symptoms from impairments that limited what type of jobs he could perform but did not prevent him from working. A physician at Homestead Hospital who treated Colwell's ankle recorded it had tenderness and mild swelling yet could bear weight to walk. And like the physicians who treated Colwell for back pain, doctors in the emergency rooms during his five trips to Homestead Hospital and his five trips to Jackson South Hospital recorded that Colwell had tenderness, mildly deceased range of motion, and disc herniation, but he had normal strength, sensation, reflexes, and gait. And a doctor in the emergency room of St. Lucie Medical Center who treated Colwell after a car accident recorded that he had tenderness in his neck and back and disc narrowing at L4-5, yet he had a full range of motion, equal reflexes, a normal gait, and no weakness, numbness, or motor or sensory deficits. That evidence was consistent with Dr. Bittinger's opinion that Colwell could perform work that required him to lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit six hours a day; frequently balance, kneel, and crouch; occasionally stoop, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds.

Substantial evidence also supported the finding that Colwell had the residual

4

functional capacity to perform some light work. The administrative law judge accounted for Colwell's impairments of inflammation and arthritis in his left ankle, of degenerative disc disease, and of obesity that were supported by objective medical evidence, credited his testimony about his symptoms, and discounted his testimony about the extent of his functional limitations. Colwell's medical records contained no work-related limitations. But the administrative law judge reasonably determined that Colwell had the ability to perform light work from the diagnoses and treatments provided by his physicians and their reports that Colwell's ankle was improving post-surgery, that Colwell had maintained normal muscle strength, range of motion, coordination, and gait despite his back impairment, and that he could control his pain with medication and exercise. The administrative law judge gave "significant weight" to Dr. Bittinger's opinion regarding Colwell's "exertional limitations." But based on medical records that Dr. Bell and hospitalists prepared after Dr. Bittinger's report, the administrative law judge gave "partial weight" to Dr. Bittinger's postural and environmental limitations, found that Colwell's limitations were not as severe as he asserted, and adjusted his range of work to exclude him from operating foot controls with his left foot and to reduce the frequency that he could kneel and crouch.

The administrative law judge was entitled to discredit Colwell's testimony about the limiting effects of his pain and his impairments. Consistent with the

standard used to assess credibility, *see Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002), the administrative law judge found that Colwell's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Colwell's testimony that he had to sit between 20 and 30 minutes before he could stand or move, that he could not stand in place for more than ten seconds, that he laid down six to seven hours a day, and that he could not work full-time or lift and carry more than five to ten pounds conflicted with statements he made about his daily activities. Colwell alleged a disability onset date of September 9, 2014, but he told Dr. Robbins in October 2014 that he was working as a handyman and fruit picker and Dr. Bell in July 2015 that he was working as a handyman. And Colwell told hospitalists in February 2016 that he had lifted a heavy object, in July 2016 that he was working on a car, in October 2017 that he had "lift[ed] heavy weight," and in August 2018 that he had lifted a heavy couch. Colwell's testimony also conflicted with his doctors' medical findings and his repeated statements to his treating physicians and to hospitalists that the pain in his ankle and back improved when he complied with their treatment plans.

We **AFFIRM** the summary judgment in favor of the Commissioner.